UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BRIAN HESS,

        Petitioner,         Case Number: 2:06-CV-14379

v.         HON. BERNARD A. FRIEDMAN

JAN TROMBLEY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Robert Brian Hess has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, challenges his convictions on two counts of first-degree criminal sexual conduct. For the reasons set forth below, the Court denies the petition.

### I.

Petitioner's convictions arise from the sexual assault of his young son, Roger. The Michigan Court of Appeals summarized the facts relevant to Petitioner's convictions as follows:

> In September 2000, Christina Wolfe of the Family Independent Agency received a referral regarding defendant and his four minor children. As part of her investigation, Wolfe visited the boarding house where defendant and the children lived. After the visit, Wolfe interviewed defendant's eight-year-old son and seven-year-old daughter at their school. As a result of the investigation, Wolfe offered defendant services and made some suggestions on how to better care for his children. Several days later, defendant contacted Wolfe and told her he could no longer care for his children. Defendant wanted Wolfe to remove the children from his care and custody. After meeting with some potential caseworkers, defendant indicated that even with assistance, he did not believe he could care for his children. Subsequently, Wolfe filed a petition and made arrangements for the children to go into foster care.

> Eventually, defendant's eight-year-old son and seven-year-old daughter were placed at the home of Colleen Glenn, and the two younger children were placed in another home. Glenn testified that in November 2000, she looked in on the boy and the girl while they were playing in a bedroom, and saw the girl "about to pull her panties down" while the boy was laying on the bed. Glenn immediately removed the two children to the living room where she asked "if they had something to talk about." In response to what the children had to say, Glenn contacted the caseworker the next morning.
>
> In December 2000, Protective Services submitted the case to the Pontiac Police Department, where it was assigned to Detective Darence Betts. Arrangements were made to have all four children interviewed at Care House, and Betts observed the interviews. As a result of the interviews, Betts "determined that it was absolutely necessary" to interview defendant. During his initial interview, defendant denied the allegations of sexual abuse. At a subsequent interview, defendant once again denied the allegations. However, Betts testified that defendant also indicated "that there may have been some touching that was involved, maybe a couple of situations that he wasn't comfortable with."[]
>
> At trial, defendant's then nine-year-old son testified that he and his siblings slept in one room with their father at the boarding house. In that room was a bed and another mattress that was placed directly on the floor. The boy testified that on numerous occasions, defendant would anally penetrate the boy while he was lying on the bed. The boy estimated that defendant had done this "[l]ike 90" times. Additionally, the boy stated that defendant had placed the boy's penis in defendant's mouth, also "[l]ike 90" times, and that the reverse had also occurred. The boy maintained that the minor son of defendant's girlfriend, his two cousins, and an uncle had also sexually abused him.
>
> The boy also testified that he had witnessed defendant anally penetrate his seven-year-old sister. Additionally, he stated that defendant had instructed the boy to engage in similar activities with his seven-year-old sister, and that defendant had taken pictures of this activity. Defendant's seven-year-old daughter testified that defendant had done things in the bedroom that made her feel bad "[l]ike almost every night," but when asked what those things were, the girl repeatedly stated that she had forgotten.

People v. Hess, No. 235651, slip op. at 1-2 (Mich. Ct. App. Nov. 19, 2002) (footnote omitted).

## II.

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct. On July 10, 2001, he was sentenced as a third habitual offender to two terms of twenty-five to fifty years' imprisonment, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I.   The trial court's decision to allow 'other bad acts' evidence against this defendant was an abuse of discretion which denied Mr. Hess his state and federal constitutional rights to a fair trial.
>
> II.  Mr. Hess is entitled to a new trial where the verdict was against the great weight of the evidence.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Hess, No. 235651 (Mich. Ct. App. Nov. 19, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Hess, No. 122937 (Mich. May 30, 2003).

On March 23, 2004, Petitioner filed a *pro se* motion for relief from judgment in the trial court, raising the following claims:

> I.    The trial court erred in its failure to utilize M.R.E. 614 (b) as to M.C.L. 750.423 in the testimony of the alleged victim, thus denying defendant his constitutional rights under the Fourteenth Amendment as to equal protection of the law.
>
> II.   The prosecution used known procured testimony by the alleged victim, in violations of M.C.L. 750.423 – 424 and 425, thus denying defendant his constitutional right to due process under the Fourteenth Amendment.
>
> IIIa. Trial counsel Mr. Jerome Sabbota, failed to subject the prosecution's case to a

meaningful adversarial testing in the cross-examination of the alleged victim, in violation of defendant's Sixth Amendment right to effective assistance of counsel.

IIIb. Trial counsel Jerome Sabbota failed to conduct pre-trial investigation, failed to seek available witnesses that would corroborate there was no crime, in violation of defendant's Sixth Amendment right to effective assistance of counsel.

IV. Appellate counsel Neil J. Lleithauser provided defendant with ineffective assistance of appellate review, in his failure to raise viable issues on review, denying defendant his constitutional right under the Sixth Amendment to effective assistance of counsel.

The trial court denied the motion for relief from judgment. People v. Hess, No. 2001-177490 (Oakland County Circuit Court Sept. 20, 2004).

Petitioner sought leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal. People v. Hess, No. 263608 (Mich. Ct. App. Jan 23, 2006); People v. Hess, No. 130716 (Mich. July 31, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I. Petitioner's Fifth and Fourteenth Amendment constitutional right to due process was violated where the trial court allowed "other bad acts" evidence which showed petitioner's criminal propensity.

II. Petitioner's Fifth and Fourteenth Amendment right to due process was violated where the trial court abused its discretion by failing to utilize its duty to interrogate the victim as to the coercion of his testimony.

III. Petitioner's Fifth and Fourteenth Amendment right to due process was violated where the prosecutor knowingly allowed perjured testimony.

IV. Petitioner's Sixth Amendment right to effective assistance of counsel was violated where trial counsel failed to subject the prosecution's case to a meaningful adversarial testing and failed to conduct any pre-trial investigation that would have corroborated there was no crime.

> V.	The failure of appellate counsel to raise the herein viable claims denied petitioner his Sixth Amendment right to effective assistance of counsel and was "cause" to overcome the state procedural default of claims two through four.

### III.

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[s]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims. See Wiggins v. Smith, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429, 433 (6th Cir.1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." Wiggins v. Smith, 539 U.S. at 521 (quoting Williams v. Taylor, 529 U.S. 362, 409 (2000)) (internal quotes

omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also* Austin v. Jackson, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case."  Id. at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . .  Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable.

Id. at 409, 410-11. *See also* Dorchy v. Jones, 398 F.3d 783, 787-88 (6th Cir. 2005); McAdoo v. Elo, 365 F.3d 487, 493 (6th Cir. 2004); Rockwell v. Yukins, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## IV.

### A.

In his first claim for habeas corpus relief, Petitioner argues that he was denied his right to due process when the trial court admitted testimony regarding other, uncharged acts of sexual assault allegedly perpetrated by Petitioner against his son and daughter. Respondent argues that this claim is both unexhausted and meritless.

A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." Levine v. Tornik, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also* Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). The Court has concluded that this claim does not warrant habeas corpus relief. Accordingly, in the interests of efficiency and justice, the Court will address Petitioner's

claim rather than dismiss the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); Cain, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See* Dowling v. United States, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see* Huddleston v. United States, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). Id. at 513. Petitioner's challenge to the admission of other acts evidence, therefore, does not warrant habeas relief.

### B.

Respondent argues that Petitioner's remaining claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S.

at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's remaining claims.

## C.

Petitioner claims that the trial court abused its discretion by not applying Michigan Rule of Evidence 614(b) and interrogating the victim regarding the potential that his testimony was coerced.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991), *quoting* Louis v. Jeffers, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." Long v. Smith, 663 F.2d 22, 23 (6th Cir. 1981). Therefore, Petitioner's claim that the trial court violated Michigan Rule of Evidence 614(b) is not cognizable on federal habeas review.

Moreover, while Michigan Rule of Evidence 614(b) grants a trial judge the discretion to interrogate witnesses, neither it, nor the corollary Federal Rule of Evidence, mandate that a trial judge do so. *See* U.S. v. Williams, Nos. Civ.A. 00-248, CR. A. 94-196-1, 2000 WL 1886602, *2 (E.D. Pa. December 13, 2000).

## D.

In his third habeas claim, Petitioner argues that his right to due process was violated when the prosecutor knowingly allowed perjured testimony from his son, Roger.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." Giglio v. United States, 405 U.S. 150, 153

9

(1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" Giglio, 405 U.S. at 154 (*quoting* Napue, 360 U.S. at 271); *see also* United States v. Agurs, 427 U.S. 97, 103 (1976). In order to prove this claim, a petitioner must show that

> (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1999). Petitioner has the burden of proving a *Giglio* violation. Malcum v. Burt, 276 F. Supp.2d 664, 684 (E.D. Mich.2003), *citing* Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir.1999).

In this case, Petitioner has highlighted some inconsistencies in Roger's trial testimony. Defense counsel adequately explored these inconsistencies. Petitioner has failed to demonstrate that any of the testimony was false, rather than simply the result of confusion, the witness's young age, or an uncertain memory. While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. Petitioner has failed to show that the prosecutor presented false testimony.

**E.**

Petitioner claims that his trial counsel was ineffective. Specifically, Petitioner argues that trial counsel (i) should have requested a hearing to determine whether Roger's testimony was coached; (ii) failed to conduct adequate pretrial investigation; (iii) failed to secure testimony of a medical expert; and (iv) abandoned Petitioner's defense in closing argument.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced

11

petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

Petitioner claims that counsel was ineffective in failing to move for a hearing to determine whether Roger had been counseled to provide false testimony. Defense counsel's cross-examination of Roger was effective. He questioned Roger extensively regarding his pre-trial preparation and explored Roger's motive for testifying. Defense counsel's cross-examination of Roger elicited testimony helpful to the defense. Specifically, Roger admitted that he was angry with his father, that he wanted to live with his mother, and that testifying against his father would facilitate this desired result. The Court finds that the manner in which defense counsel handled Roger's testimony was adequate and effective.

Next, Petitioner argues that his attorney failed to conduct an adequate pretrial investigation. Petitioner argues that, had counsel done so, he would have discovered that the children were not in Petitioner's care at the time Roger testified the assaults occurred. Petitioner attaches to his petition affidavits of Leona Byrd and Connie Morgan. Byrd rented her home's upstairs bedroom to Petitioner in June 2000, and states in her affidavit that Petitioner's four children stayed with him in July 2000, but were not residing with him in June 2000, when the abuse allegedly occurred. Morgan's affidavit states that she stayed with Petitioner in June 2000 and that his children were not in his care.

Under *Strickland*, trial counsel has a duty to investigate:

Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any

> ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) (citation omitted).

While both affidavits state that the children were not living with Petitioner in June 2000, neither state that Petitioner had no access to his children or that the children never stayed with him. The affidavits support a conclusion that another individual was providing primary care for the children, but do not necessarily support a conclusion that Petitioner had no contact with his children. In addition, Byrd states that the children lived with Petitioner in July 2000. Given that any exculpatory value from these witnesses would have been quite limited and the strength of the evidence against Petitioner, the Court finds that Petitioner has failed to show that he was prejudiced by counsel's failure to call these witnesses.

Petitioner next argues that his attorney was ineffective in failing to consult a medical expert regarding the physical examinations of Roger and Joy. The prosecution's medical expert, Dr. Mary Smyth, testified that her physical examination of Roger revealed physical injuries that might be consistent with penetration, but were also consistent with constipation. Petitioner states, in one conclusory sentence, that a defense expert could have argued that Dr. Smyth's findings were not consistent with the time line of events. Petitioner's argument in this regard is conclusory. Moreover, Dr. Smyth testified that her examination of Joy revealed no injury and that she could not determine whether Roger's injury was the result of sexual abuse. Thus, Dr. Smyth's testimony regarding the physical examination did not yield any information directly

implicating Petitioner.

Finally, Petitioner argues that his attorney was ineffective because he abandoned the defense theory in closing argument. Petitioner's defense was based upon an argument that Roger was coached to testify in a manner that incriminated Petitioner. In closing argument, defense counsel stated:

> See, I know when you listen to this case and you hear this stuff, you want to find somebody. I mean who's doing this thing, if these things happened to this little boy? Why is he staying it? I don't know why he's saying it?

Tr., Vol. II, at p. 66.

Petitioner argues that, by saying "I don't know why he's saying it," defense counsel undermined the theory upon which the whole defense was based – that is, that Roger was coached to make false allegations so that he could be released to the custody of his aunt or mother. Petitioner focuses on an isolated sentence in closing argument. The vast majority of defense counsel's closing argument is devoted to exploring the motives Roger had for testifying and the potential coaching he received prior to his testimony. Considering defense counsel's closing argument in its entirety, the Court concludes that defense counsel's argument effectively focused on the strongest elements of Petitioner's defense, clearly explained them to the jury, and argued for an acquittal on that basis. Thus, the Court finds that counsel was not ineffective in this regard.

**F.**

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. As discussed above, the Court determined that the interests of judicial economy were best served by the Court's addressing the merits of Petitioner's defaulted claims.

Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition. Petitioner has failed to show that any of these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## V.

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. Castro v. United States, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the Court has carefully reviewed the case record and the relevant law, and concludes that it is presently best able to decide whether to issue a COA. *See id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the

relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (*quoting,* Lyons v. Ohio Adult Parole Auth*.,* 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel*,* 529 U.S. 473, 484 (2000) (internal quotation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

**VI.**

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that and this matter is DISMISSED WITH PREJUDICE**.**

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

DATE: May 1, 2009

16